COPY

JUDGE ABRAMS

**13 CV 8480**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD MANZANO,

                Plaintiff,

   -against-

THE CITY OF NEW YORK; New York City
Police ("NYPD") Officer RAFAEL
SANCHEZ, Shield # 12327; NYPD Officer
WILLIAM HOLLAND, Shield # 12905; and
NYPD Officer KELLY ROURKE, Shield #
1752,

                Defendants.

Case No.: 13 Civ. _____

**COMPLAINT AND JURY
TRIAL DEMAND**



RECEIVED
NOV 2 6 2013
U.S.D.C. S.D. N.Y.
CASHIERS

## PRELIMINARY STATEMENT

1.    This is a case of horrific police brutality in which members of the New York City Police Department ("NYPD") beat a college graduate—with no prior criminal record—so severely that he suffered permanent traumatic brain injury.

2.    The suit arises from an incident on July 2, 2011 during which police officers brutally beat, falsely detained, arrested, wrongfully imprisoned, and severely injured Donald Manzano.

2.    Plaintiff Donald Manzano graduated with a degree in Mechanical Engineering from Old Dominion University, in Virginia.  At the time of the incident, he was 25 years old.

3.    Prior to the incident, Mr. Manzano had never been arrested or convicted of a crime.

4.    Early in the morning on July 2, 2011, Mr. Manzano was assaulted outside a bowling alley in the Harlem neighborhood of New York City.  As a result of the severe head

trauma he endured, Mr. Manzano suffered permanent cognitive impairment, including memory loss.

5.      Despite those injuries and that impairment, it is clear what transpired: On July 2, 2011, two police officers—Defendants Rafael Sanchez and William Holland—beat Mr. Manzano.

6.      Defendant Sanchez admitted on the record in open court that he repeatedly struck Mr. Manzano in the head with the barrel of his gun.

7.      Defendant Holland admitted on the record in open court that he repeatedly struck Mr. Manzano with his expandable metal baton.

8.      As a result of that beating, Mr. Manzano lost consciousness during the attack and sustained a serious concussion.  He received 20 staples in his head and stitches to his forehead.  Since the incident, he has suffered from seizures, migraines, memory loss, and ringing in his ears, along with emotional distress.

9.      Mr. Manzano spent over a week in jail after the assault before he was able to make bail.

10.     He was charged with assaulting an officer and resisting arrest.

11.     Nearly two years later, after a jury trial, he was acquitted of all charges.

12.     This Complaint, arising from these outrageous and unlawful acts, seeks compensatory and punitive damages, costs, disbursements, and attorneys' fees pursuant to applicable state and federal civil rights law.

## THE PARTIES

13.     Plaintiff Donald Manzano is a citizen of the United States and resided in Brooklyn, New York at the time of the events giving rise to this Complaint.

14.     Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

15.     At all times relevant hereto, Defendant Police Officer Rafael Sanchez, shield #12327 ("Sanchez"), was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of Defendant City, and within the scope of his employment as such.  On information and belief, at all times relevant hereto, Defendant Sanchez was under the command of the Police Service Area 6.

16.     At all times relevant hereto, Defendant Police Officer William Holland, shield #12905 ("Holland"), was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of Defendant City, and within the scope of his employment as such.  On information and belief, at all times relevant hereto, Defendant Holland was under the command of the Police Service Area 6.

17.     At all times relevant hereto, Defendant Police Officer Kelly Rourke, shield #1752 ("Rourke"), was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of Defendant City, and within the scope of her employment as such.  On information and belief, at all times relevant hereto, Defendant Rourke was under the command of the Police Service Area 6.

18.     At all times relevant hereto, Officer Sanchez, Officer Holland, and Officer

Rourke (collectively the "Officer Defendants") were acting under the color of state law.

## JURISDICTION AND VENUE

19.   This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York state common law.

20.   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

21.   The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

22.   Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

23.   On July 1, 2011, Mr. Manzano accompanied his brother and some friends to a party at a bowling alley at Harlem Lanes, located at 2116 Adam Clayton Powell Jr. Boulevard, which is in Manhattan at the corner of 126th Street and Adam Clayton Powell Jr. Boulevard.  They arrived at approximately 11 p.m.

24.   At approximately 4 a.m. on the morning of July 2, 2011, there was an altercation between bowling alley patrons, during which two of Mr. Manzano's friends were assaulted by numerous people.

25.   Mr. Manzano was not involved in the fight and did not even witness the assault because he was in the bathroom at the time.

26.   When Mr. Manzano exited the bathroom, the bowling alley staff ushered everyone outside.

27.   Upon exiting the bowling alley, Mr. Manzano looked for his brother.  Just

as he spotted him, Mr. Manzano was attacked.  Mr. Manzano tried to defend himself.

28.    While Mr. Manzano was trying to defend himself, Defendant Sanchez and Defendant Holland were on patrol in a marked police car.  According to the testimony they provided at Mr. Manzano's criminal trial, a civilian vehicle stopped on the street to tell them that there was a fight a few blocks away.

29.    Defendants Sanchez and Holland drove toward the site and stopped when they saw people fighting in the street, near the corner of 127th Street and 7th Avenue.  Both officers exited their vehicle.  At this point, their testimony diverged and their accounts of what happened are inconsistent.

30.    Defendant Sanchez admitted on the record in open court that he struggled with Mr. Manzano, pulling him to the ground and wrapping his legs around him.

31.    Defendant Sanchez admitted that he used his gun to repeatedly strike Mr. Manzano, until Mr. Manzano fell forward to the ground.

32.    Defendant Sanchez's gun was loaded and had no safety.

33.    Soon, Defendant Holland joined Defendant Sanchez.  Defendant Holland admitted in open court that he repeatedly struck Mr. Manzano with his expandable baton, called an "ASP."

34.    Despite the fact that the two officers were both beating Manzano at the same time, Defendant Sanchez claimed he did not see Defendant Holland beat Mr. Manzano with his ASP, and Defendant Holland claimed he did not see Defendant Sanchez beat Mr. Manzano with his gun.

35.    Defendant Officer Kelly Rourke was on patrol and received a radio call requesting police assistance at Harlem Lanes.  When she arrived, she testified that she saw Mr.

Manzano face-down on the ground. She testified that she saw Defendants Sanchez and Holland trying to handcuff Mr. Manzano. She heard Mr. Manzano screaming and noticed that he was bleeding.

36.  Mr. Manzano regained consciousness to find police officers beating him while his hands were in handcuffs.

37.  Officer Rourke testified that she did not see what Officer Sanchez was doing to Mr. Manzano, even though she admits she was present at the time of the assault.

38.  At no point did Officer Rourke attempt to stop Officers Sanchez and/or Holland from injuring Mr. Manzano.

39.  At no point did Officer Holland attempt to prevent Officers Sanchez and/or Rourke from injuring Mr. Manzano.

40.  At no point did Officer Sanchez attempt to prevent Officers Holland and/or Rourke from injuring Mr. Manzano.

41.  The Officer Defendants' incompetent and illegal conduct in beating Mr. Manzano and/or failing to intervene did not meet the professional standards of care required of police officers.

42.  Mr. Manzano was taken to Harlem Hospital, where he was handcuffed to the bed. He received staples in the back of his head and stitches to his forehead. Mr. Manzano was also bleeding from his shoulder and his upper lip.

43.  Mr. Manzano spent over a week in the Manhattan jail known as "the Tombs," until bail was posted.

44.  Mr. Manzano was originally charged with two counts of assault, resisting arrest, robbery, and two counts of possession of a firearm.

45.     After a grand jury was convened and heard testimony from Mr. Manzano, among others, the robbery and firearm charges were dropped.

46.     Mr. Mazano was forced to attend court numerous times over a nearly two-year period.

47.     On March 12, 2013, Mr. Manzano was acquitted by a jury of all remaining charges.

48.     As a result of this incident, Mr. Manzano has a thick, visible scar that stretches across the back of his head from one ear to the other.  He also has a scar on his lip.  He suffered throbbing pain in his head for weeks following the incident.  He suffers from dizziness, memory loss, migraines, seizures, and ringing in his ears.  He is prescribed medication to treat his migraines and other medication to treat and prevent his seizures.  He cannot drive due to his seizures.  He had blurred vision after the incident and still occasionally has vision problems.  He suffers continuing knee and back pain.  He has also experienced emotional stress, depression, and anxiety as a result of the incident, and he continues to have trouble sleeping.  For two years, Mr. Manzano could not obtain a job because of the open criminal case against him.

49.     Mr. Manzano has sought continuing medical treatment for his injuries.  He has seen an ear specialist to address his hearing problems.  He has been and continues to be regularly treated by a neurologist to address his seizures and migraines.  He has sought help from a counselor to address his anxiety and emotional distress.  To this day, he remains under the continuing care of these physicians.

50.     Within ninety days after the jury acquitted Mr. Manzano, a written notice of claim, sworn by Plaintiff, was served upon Defendants by personal delivery of notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

51.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

52.     This action has been commenced within one year and ninety days after Mr. Manzano was acquitted of all charges.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Excessive Force
(Against the Officer Defendants)

53.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

54.     By using excessive force and assaulting Plaintiff, the Officer Defendants deprived Plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

55.     The Officer Defendants acted under pretense and color of state law and in their individual capacities and within the scope of their respective employments as NYPD officers.  Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

56.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Failure to Protect
(Against the Officer Defendants)

57.     Plaintiff repeats and realleges the above paragraphs as if the same were

fully set forth at length herein.

58.     The Officer Defendants failed to intercede or take any steps to protect Plaintiff from the unjustified and unconstitutional treatment at the hands of the Officer Defendants.

59.     The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers.  Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

60.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – False Arrest & False Imprisonment
(Against the Officer Defendants)

61.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

62.     The Officer Defendants maliciously commenced criminal proceedings against Plaintiff, charging him with two counts of felony assault, resisting arrest, robbery, and two counts of possession of a firearm.  The Grand Jury refused to return an indictment for the robbery and firearm charges.  Mr. Manzano was prosecuted on two counts of felony assault and one misdemeanor count of resisting arrest.

63.     After proceedings in criminal court in which Plaintiff was forced to defend

himself, all charges against Plaintiff were terminated in Plaintiff's favor.

64.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff were carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

65.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

66.     Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned, and falsely charged.

67.     At all times, the unlawful, wrongful, and false arrest and imprisonment of Plaintiff were without basis and without probable or reasonable cause.

68.     All this occurred without any fault or provocation on the part of Plaintiff.

69.     The Officer Defendants acted under pretense and color of state law and in their individual capacities and within the scope of their respective employment as NYPD officers.  Said acts by the Officer Defendants were beyond the scope of their justification, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

70.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Malicious Prosecution
### (Against the Officer Defendants)

71.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

72.     The Officer Defendants maliciously commenced criminal proceedings against Plaintiff.

73.     The Officer Defendants charged Plaintiff with these charges falsely, maliciously, in bad faith, and without probable cause.

74.     After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

75.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
Malicious Prosecution
(Against all Defendants)

76.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

77.     The Defendants maliciously commenced criminal proceedings against Plaintiff.

78.     The Defendants charged Plaintiff with these charges falsely, maliciously, in bad faith, and without probable cause.

79.     After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

80.     Defendants, their officers, agents, servants, and employees were responsible for the malicious prosecution of plaintiff during this period.  Defendant City, as employer of the Officer Defendants, is responsible for the wrongdoing under the doctrine of *respondeat superior.*

81.     As a direct result and proximate result of the misconduct and abuse of

authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Negligent Hiring and Retention of Employment Services
(Against Defendant City)

82.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

83.    Upon information and belief, Defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff.

84.    Upon information and belief, Defendant City, through the NYPD, owed a duty of care to Plaintiff because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that an injury to Plaintiff or to those in a like situation would result from this conduct.

85.    Upon information and belief, the Officer Defendants were unfit and incompetent for their positions.

86.    Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that the Officer Defendants were potentially dangerous.

87.    Upon information and belief, Defendant City's negligence in hiring and retaining the Officer Defendants proximately caused Plaintiff's injuries.

88.    Upon information and belief, because of the Defendant City's negligent hiring and retention of the aforementioned Officer Defendants, Plaintiff incurred significant and lasting physical and mental injury.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(a) On the First, Second, Third, and Fourth Claims for Relief against the Officer Defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

(b) On the Fifth Claim for Relief against all Defendants, compensatory damages in an amount to be determined at trial, and punitive damages against the Officer Defendants in an amount to be determined at trial;

(c) On the Sixth Claim for Relief against Defendant City, compensatory damages in an amount to be determined at trial; and

(d) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 26, 2013

EMERY CELLI BRINCKERHOFF & ABADY
LLP

By: _____
Jonathan S. Abady
Earl Ward
Elizabeth S. Saylor
Alison Frick
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000
*Attorneys for Plaintiff*